This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, the State of Ohio ("the State"), appeals the decision of the Lorain County Court of Common Pleas, which granted the motion to dismiss of Defendant, Kenneth Osborn. We affirm.
On October 13, 1995, State Trooper Myers arrested Defendant for possession of marijuana, operating a vehicle with unauthorized license plates, and lane straddling. Four days later Defendant appeared before the Oberlin Municipal Court with counsel where he waived the preliminary hearing and the case was bound over to the Lorain County Grand Jury. On March 27, 1996, the grand jury indicted Defendant for one count of trafficking in marijuana, in violation of R.C. 2925.03(A)(4) and one count of the use of unauthorized plates, in violation of R.C. 4549.08(C). Subsequently, the trial court continued a previously scheduled arraignment, since Defendant had not been served with the indictment.
On March 29, 1996, the Lorain County Sheriff's Department attempted to serve Defendant with the indictment and summons at the address provided by Defendant at the time of his arrest. However, Defendant no longer lived at that address. Defendant was not served until August 11, 2000, approximately 53 months later.
Defendant appeared for arraignment on August 16, 2000. The trial court continued the arraignment on two occasions and continued the subsequent pretrial hearing, in order to allow Defendant to obtain legal counsel. The court held the first pretrial hearing on September 22, 2000, at which Defendant was represented by counsel and waived his right to a speedy trial, pursuant to R.C. 2945.71.
Defendant then moved the court to suppress the evidence, alleging that it was illegally obtained. The trial court denied Defendant's motion. On October 27, 2000, Defendant requested that the next pretrial be continued until December 8, 2000, and waived his right to a speedy trial. Then, on December 8, 2000, Defendant moved to dismiss the charges based on post-indictment delay. After a hearing, the trial court granted Defendant's motion to dismiss. The State timely appealed raising one assignment of error for review.
 ASSIGNMENT OF ERROR The trial court erred to the prejudice of the State * * * by granting [Defendant's] motion to dismiss for post-indictment delay.
In its sole assignment of error, the State contends that the trial court erred in granting Defendant's motion to dismiss for post-indictment delay. We disagree.
When reviewing an assignment of error raising a defendant's denial of his right to a speedy trial, this court applies the de novo standard to questions of law and the clearly erroneous standard to questions of fact. State v. Thomas (Aug. 11, 1999), Lorain App. No. 98CA007058, unreported, at 4.
"Post-indictment delay is cognizable under both the Ohio and United States Constitutional guarantees of a speedy trial." State v. Coleman
(Jan. 19, 1977), Lorain App. No. 2479, unreported, at 2, citing Marionv. United States (1971), 404 U.S. 307. When analyzing whether an accused has been denied the right to a speedy trial, a court must consider four factors: (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of his right; and (4) prejudice to the accused.Barker v. Wingo (1972), 407 U.S. 514, 530, 33 L.Ed.2d 101, 117. None of the individual factors is decisive. Id. at 533, 33 L.Ed.2d. at 118. The court must consider them together, along with any other relevant circumstances in a sensitive balancing process. Id.
The United States Supreme Court has noted that the first factor, the length of the delay, actually involves a double inquiry. Doggett v.United States (1992), 505 U.S. 647, 651, 120 L.Ed.2d 520, 528. First, an accused must make a threshold showing of delay beyond that which is ordinary, i.e., a "presumptively prejudicial" delay, to trigger application of the Barker balancing test. Id. at 651-52,120 L.Ed.2d at 528. Second, once the Barker analysis is triggered, the length of the delay, beyond the initial threshold showing, is again considered and balanced against other relevant factors. Id.
 A. Threshold Showing of Delay
Here, the Lorain County Grand Jury indicted Defendant on March 27, 1996, but Lorain County officials did not serve Defendant with the indictment and summons until August 11, 2000. Courts generally find a post-accusation delay "presumptively prejudicial" as it approaches the one year mark. Id. at 652, 120 L.Ed.2d at 528, fn. 1. In accordance with this general guideline, we find the approximate 53 month delay between the indictment and the service of the indictment presumptively prejudicial, thus triggering the application of the Barker balancing test. State v.Triplett (1997), 78 Ohio St.3d 566, 569 (finding that a 54 month delay is enough to trigger the Barker inquiry).
 B. The Length of the Delay
Revisiting the issue of length of delay within the context of theBarker analysis, the trial court found that this first factor weighed slightly in favor of Defendant, since he was not incarcerated during the delay. In Triplett, 78 Ohio St.3d at 569, the Ohio Supreme Court addressed similar facts and stated as follows:
 [T]he [54 month] delay in this case, while significant, did not result in any infringement on [Defendant's] liberty. In fact, according to her own testimony, she was completely ignorant of any charges against her. The interests which the Sixth Amendment was designed to protect — freedom from extended pretrial incarceration and from the disruption caused by unresolved charges — were not issues in this case. Therefore, while the first factor does technically weigh in [Defendant's] favor, its weight is negligible.
Further, in its appellate brief the State concedes and we agree that this factor weighs slightly in favor of Defendant.
 C. The Reason for the Delay
In terms of the second factor, the reason for the delay, we must be aware of the differing weights that are assigned to different reasons.Thomas, supra, at 6. If the defendant caused or contributed to the delay, this factor would weigh against him. If the government's negligence caused the delay, this factor would weigh somewhat in the defendant's favor. State v. Alston (Oct. 29, 1997), Lorain App. No. 97CA006727, unreported at 6, citing State v. Grant (1995),103 Ohio App.3d 28, 35. If the government deliberately delayed, hoping to impinge on the defendant's ability to mount a defense, it would weigh heavily in the defendant's favor. Alston, supra, at 6, quoting Barker,407 U.S. at 531, 33 L.Ed.2d at 117.
"Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground." Doggett,505 U.S. at 656-657, 120 L.Ed.2d at 531. Negligence, however, "still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." Id. at 657,120 L.Ed.2d at 531-532. The longer the delay due to official negligence, the less tolerable the delay becomes. Id. at 657, 120 L.Ed.2d at 532. The trial court's determination of negligence should be reviewed with considerable deference. Id. at 652, 120 L.Ed.2d at 528-529.
In the case before us, the trial court held that this factor weighed slightly in favor of Defendant. It found that the State's efforts to serve Defendant were "weak." Further, the trial court noted that Defendant could have advised the court of his periodic changes in addresses, but failed to do so.
The record indicates that at the time of Defendant's arrest, he indicated to the arresting state trooper that his current address was 3296 W. 98th in Cleveland. Defendant testified that he had been living at that location with a friend and remained there until late 1995 or early 1996. Subsequent to his arrest, Defendant moved four times within Lorain and Cuyahoga counties and also served three months on an assault conviction in Hamilton County.[1] Defendant failed to notify the trial court or the police of his changes of address.
Also, during the timeframe from arrest to service of the indictment, Parma police in Cuyahoga County cited Defendant for a moving violation; Cincinnati police arrested Defendant on assault charges for which he served a three month sentence in Hamilton County; and North Ridgeville police in Lorain County arrested Defendant for driving under the influence. Defendant testified that on each occasion he provided police with his correct current address. However, Defendant's testimony with regard to the Parma citation indicates otherwise. Specifically, Defendant stated that he received the ticket in November 1995. According to his testimony, Defendant was still residing at 3296 W. 98th in Cleveland at that time. Nevertheless, Defendant stated that he provided Parma police with his parents' address, the address at which he claimed he received all of his important papers. This was also the address where police ultimately served Defendant with the indictment.
The State points to the testimony of the arresting officer, Sergeant Myers of the Ohio State Highway Patrol, to demonstrate the State's continuing efforts to locate Defendant during the timeframe in question. Sergeant Myers testified that after Defendant's indictment, he tried to locate Defendant. He stated that he did so in an effort to comply with the State Highway Patrol Division's policy, which required him to follow up on the case until the indictment was served or was no longer valid. Specifically, Sergeant Myers contacted the Lorain County Sheriff's Department each month to ascertain whether Defendant had been served with the indictment. Sergeant Myers stated that every three to four months he would input Defendant's name and social security number into the computer system to try to locate any change of address or newly-issued drivers license that would indicate a current address. Eventually, Sergeant Myers located a new address for Defendant. He called the Sheriff's Department to confirm that they could still find the indictment and gave them the new address for service.
The record before us demonstrates that other than the single attempt by the Lorain County Sheriff's Department to serve the indictment and summons upon Defendant, no other attempts at service were made. No return was filed indicating additional attempts. There is no evidence that the Lorain County authorities made any effort to locate Defendant through contacts with potential friends, family, or acquaintances of Defendant. More importantly, as noted by the trial court, they did not take any additional steps to serve or locate Defendant, such as the issuance of a warrant. The initial failure of service of the summons and indictment did not preclude resort to issuing a warrant for Defendant's arrest. See Crim.R. 4(B) (providing that "more than one warrant or summons may issue on the same complaint"). This affirmative step is in place to allow the prosecutor and the court to ensure that speedy trial violations do not defeat the successful prosecution of criminal offenders. See State v.Tope (1978), 53 Ohio St.2d 250, 252.
Although there is no indication that the State acted in bad faith, on the record before us it is apparent that the Lorain County authorities viewed the charges to be a low priority, as evidenced by the county's lone attempt at service over the 53 month period. However, in the State's favor, Defendant admitted that he failed to notify the court or police of his change of address. Further, Defendant provided Parma police with a different address than that which he provided police at the time of the arrest in question, even though he resided at 3296 W. 98th on both occasions. In light of the foregoing facts, we find this factor weighs equally in favor of Defendant and the State. See Thomas, supra, at 6-7 (finding that this factor weighed equally in favor of both parties, where the State was negligent in its efforts to serve and Defendant provided police with less than forthright information regarding his shifting addresses).
 D. Defendant's Assertion of his Right
Regarding the third factor, whether a defendant has asserted his right, the United States Supreme Court reiterated that a defendant has no duty to bring himself to trial. Barker, 407 U.S. at 527,33 L.Ed.2d at 115. It is the burden of the state to ensure that a defendant is afforded a speedy trial. Id. However, the Court went on to say that a defendant's assertion of, or failure to assert, the speedy trial right is a factor to consider in determining whether that right was denied. Id. at 528,33 L.Ed.2d at 116. A defendant's timely assertion should be afforded moderate weight. Triplett, 78 Ohio St.3d at 570; State v. Auterbridge
(Feb. 25, 1998), Lorain App. No. 97CA006702, unreported, at 8.
In the instant case, the trial court held that Defendant timely raised this issue. The record indicates that after service of the summons and indictment, Defendant first appeared in court on August 16, 2000, at which time he was not represented by legal counsel. He obtained counsel for the first pretrial hearing on September 22, 2000. One month later, Defendant moved to suppress the evidence, which the trial court denied on November 30, 2000. Shortly thereafter, Defendant asserted his right to a speedy trial by moving to dismiss for post-indictment delay.
In sum, Defendant did not fail nor neglect to timely assert his right to a speedy trial. Approximately two months after obtaining legal counsel, he moved to dismiss for the post-indictment delay. Additionally, contrary to Appellant's argument, this is not a case where Defendant waited until the eleventh hour to assert his rights. SeeThomas, supra, at 8. Thus, we find that this factor weighs in favor of Defendant.
 E. Prejudice to Defendant
In terms of the fourth factor, prejudice to the defendant can take three forms: lengthy incarceration, anxiety over unresolved criminal charges, and impediments to an effective defense. Barker,407 U.S. at 532, 33 L.Ed.2d at 118. In Barker, the Court further acknowledged that "[i]f witnesses die or disappear during a delay, the prejudice is obvious." Id. Furthermore, affirmative proof of particularized prejudice is not essential to every speedy trial claim. Doggett, 505 U.S. at 655,120 L.Ed. at 530.
Defendant maintained that he was prejudiced by the 53 month delay because during that time a witness disappeared who would have allegedly testified on Defendant's behalf. Defendant stated that the witness, Boyd Taylor, the co-defendant, was going to inform the court that he was responsible for the marijuana found in the car. Defendant further testified that he searched the area where Taylor previously resided in an attempt to locate him; however, Defendant was unable to discover Taylor's whereabouts.
The State attempted to rebut this argument during the hearing in its closing argument, where it alleged that Taylor currently resided at an address in Garrettsville, Ohio. Also, in its appellate brief, the State contends that Taylor contested his own charges at a previous bench trial in Lorain County; thus, it is unlikely that Taylor was going to testify that he owned the marijuana in question. The record before this court does not support either of the State's allegations. Had the State adequately supported these arguments with evidence in the record, we may have reached a different conclusion after considering the applicable factors.
Therefore, the "prejudice is obvious" based on the record as it stands before this court, Defendant's specific, uncontradicted statements regarding the missing witness, and Defendant's testimony regarding his efforts and inability to locate the witness. See Barker,407 U.S. at 532, 33 L.Ed.2d at 118. We agree with the trial court and find that this factor weighs significantly in favor of Defendant.
Viewing the four Barker factors together in this case, as required, we hold that Defendant established that he was denied his right to a speedy trial due to the post-indictment delay. Thus, the trial court did not err in granting Defendant's motion to dismiss for post-indictment delay. The State's assignment of error is overruled.
The State's sole assignment of error is overruled. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BATCHELDER, P.J., BAIRD, J. CONCUR.
[1] The record is unclear as to the specific dates that Defendant served this sentence.